IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

LANCE WALKER,

    Petitioner,

       v.

UNITED STATES OF AMERICA,

    Respondent.

\*

\*

\*

\*   CIVIL NO.:   WDQ-12-2774
\*   CRIMINAL NO.:  WDQ-08-0306

\*

\*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Lance Walker was convicted by a jury of drug distribution and firearms crimes. ECF No. 41 at 1. Pending is Walker's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 67. No hearing is necessary. *See* Rule 8(a) of the *Rules Governing § 2255 Proceedings*. For the following reasons, the motion will be denied.

I.   Background

On June 26, 2008, a grand jury charged Walker with: (1) possessing with intent to distribute 50 grams or more of cocaine base on January 16, 2007 in violation of 21 U.S.C. § 841(a)(1); (2) being a felon in possession of ammunition on January 16, 2007 in violation of 18 U.S.C. § 922(g)(1); (3) possessing with intent to distribute marijuana on May 22, 2007 in violation of § 841(a)(1); (4) possessing with intent to distribute heroin on December 17, 2007 in violation of § 841(a)(1); (5) possessing

with intent to distribute cocaine on December 17, 2007 in violation of § 841(a)(1); (6) possessing with intent to distribute marijuana on December 17, 2007 in violation of § 841(a)(1); (7) possessing a firearm in furtherance of a drug trafficking crime on December 17, 2007 in violation of 18 U.S.C. § 924(c); and (8) being a felon in possession of a firearm and ammunition on December 17, 2007 in violation of § 922(g)(1). ECF No. 1. On July 18, 2008, Walker was arraigned and pled not guilty. ECF No. 4. That day, Michael P. Kushner, Esquire, and Kimberly A. Summers, Esquire, of The Blanch Law Firm, P.C. ("Blanch"), appeared for Walker. ECF Nos. 6, 8. Pretrial motions were due by August 8, 2008, with trial scheduled for September 15, 2008. ECF No. 4.

On August 8, 2008, the motions deadline, Walker moved through counsel to continue the motions deadline. ECF No. 11. Although the Court denied the motion, ECF No. 12, it did entertain pretrial motions filed by Walker through counsel after the deadline.[1] *See* ECF No. 48 (transcript). On September 10, 2008--five days before trial--by telephone conference, Walker moved through counsel to continue the date of trial. *See* ECF No. 67 at 7. The Court denied the motion. *See* ECF No. 16.

---

[1] Pretrial motions included a motion to sever the charged counts into separate trials, *see* ECF Nos. 20, 48 at 6-14, and a motion to suppress evidence, *see* ECF Nos. 19, 48 at 157-66.

2

At trial, Walker was represented by Kushner, and Jeffrey Chabrowe, Esquire.[2] ECF No. 48 at 1. The Court first heard argument on Walker's pretrial motions. Walker argued through counsel that his trial should be severed into three trials, because the charged conduct was discovered during three separate arrests over the course of one year. *See id.* at 7-9. Walker asserted that the jury would be unable to consider each offense separately and would improperly consider evidence from one incident in its consideration of the other incidents. *See id.* The Court denied this motion. *See id.* at 14. The Court also denied Walker's motion to suppress evidence from searches of his vehicles. *Id.* at 165-66.

At trial, the prosecuting attorneys--Debra Dwyer, Esquire, and Bryan Giblin, Esquire--offered testimony from seven police officers about each arrest of Walker. *See id.* at 1, 251. The defense offered testimony from Walker's friends--Matthew Dallas and Lorenzo Washington--who claimed ownership of some of the drugs. ECF No. 49 at 292. During trial, Dwyer approached Washington and told him that he could be "charged with the offense that [he was] going to take responsibility for" in his

---

[2] Summers did not represent Walker at trial, apparently because she had taken a temporary leave of absence from Blanch. *See* ECF No. 11. Chabrowe, another Blanch attorney, represented Walker in her place.

testimony. *Id.* at 169-70. Walker's counsel brought Dwyer's statements to the Court's attention. *See id.*

In the first arrest, on January 16, 2007, officers in an unmarked police car approached Walker's car in a parking lot and attempted to get him to move his car, which was blocking traffic. *See* ECF No. 48 at 207. When the officers turned on their strobe lights, Walker sped off suddenly and the officers pursued. *See id.* at 187, 207. During the pursuit, a bag containing 150 grams of crack cocaine was tossed out of Walker's car. *See id.* at 173, 188-89. Walker eventually left his car and fled on foot. *Id.* at 209. He was chased by two of the officers while another officer waited near Walker's car, guarding Walker's uncle, who was also present at the scene. *Id.* at 208-09, 239-40. After Walker was caught, the officers seized ammunition from his car and over $5000 in cash from Walker. *Id.* at 190-91; ECF No. 49 at 134-35.

Dallas testified that he had been in Walker's car during the police pursuit. *See* ECF No. 49 at 197. Dallas asserted that the crack cocaine had been hidden in his waistband, he had thrown the drugs out the window, and Walker had not known about them. *See id.* at 199, 201, 203. He stated that he left the car while the officer was guarding Walker's uncle. *Id.* at 202. However, neither the officers nor Walker's uncle saw Dallas in the car or saw him leave it. *See* ECF Nos. 48 at 190, 210; 49 at

4

233, 282. Dallas did not accurately describe the packaging of the drugs or their street value, and offered little explanation for throwing $5000 worth of crack cocaine out of the car window. *See, e.g.*, ECF No. 50 at 31-33.

In the May 22, 2007 arrest, officers stopped Walker for a traffic violation, smelled marijuana, and found two pounds of it in the backseat of the car. ECF No. 49 at 11, 15, 17-18, 25, 281. Washington, a passenger in the car, was also arrested. *Id.* at 249, 279-80. Washington testified at trial that the marijuana was his, and he had put the drugs in the backseat of the car under a jacket without Walker's knowledge. *See id.* at 268-70. Washington also inaccurately described the drugs' packaging and street value and could not name the person who had sold him the drugs. *See, e.g.*, ECF No. 50 at 13, 20, 68.

In the December 17, 2007 arrest, officers stopped Walker's car to arrest him on a warrant for an unrelated charge. ECF No. 49 at 64, 70. They searched his car and found marijuana, heroin, cocaine, and a loaded firearm.[3] *Id.* at 70, 120-21. Walker presented evidence that he did not own, or regularly drive, the car and did not know that drugs or the gun were in the car. *See* ECF No. 50 at 37, 55-57.

---

[3] In the search of the car, and Walker's girlfriend's home, officers also found tally sheets, used to track drug transactions, and a closed-circuit video surveillance system. ECF No. 49 at 83-86, 101, 106-07, 149.

In closing argument, Giblin pointed out several inconsistencies between Dallas's and Washington's testimony and other evidence offered at trial. *See id.* at 19-21, 29-33. He also highlighted areas of their testimony that he deemed improbable and not credible. *See id.* He repeatedly argued that Dallas and Washington had lied to the jury. *See, e.g.*, *id.* at 34. In her rebuttal, Dwyer also accused Dallas and Washington of lying. *See, e.g.*, *id.* at 66. She told the jury that, by convicting Walker, they would "not be stopping the drug trade in the United States, but [they could stop Walker] from ever selling drugs in" Baltimore. *Id.* at 71.

The jury found Walker guilty of all counts, except count two--possession of ammunition. *See* ECF No. 41. On December 16, 2008, Walker was sentenced to 480 months imprisonment. *Id.*

On September 22, 2008, Walker appealed his conviction on grounds that the Court improperly denied his motions to suppress, to sever the counts, and to continue the trial.[4] ECF Nos. 36, 51 at 3-11. On December 2, 2010, the Fourth Circuit affirmed Walker's conviction.[5] ECF No. 51 at 14. On April 5,

---

[4] Walker was represented by Kushner on appeal. ECF No. 42.

[5] On appeal, the Fourth Circuit affirmed Walker's conviction but remanded for resentencing, because the Court did not "provide individualized reasoning for the sentence imposed." ECF No. 51 at 11-14. On October 5, 2011, Walker was resentenced to the same term of imprisonment--480 months. ECF No. 65.

2011, the Fourth Circuit denied Walker's petition for a rehearing and rehearing *en banc*. ECF No. 53. Walker did not petition for a writ of *certiorari* to the Supreme Court. *See* ECF No. 67 at 3.

On September 17, 2012, Walker moved to vacate, set aside, or correct his sentence under § 2255. ECF No. 67. On November 13, 2012, the government opposed his motion. ECF No. 69.

II. Analysis

A. Ineffective Assistance of Counsel

Walker asserts that he received ineffective assistance of trial counsel, because counsel: (1) ineffectively argued that joinder of all counts was improper; (2) failed to properly file a motion to continue trial; and (3) failed to object to improper comments by the prosecutors during closing arguments. ECF No. 67 at 7, 10. Walker also contends that he received ineffective assistance of appellate counsel, because counsel failed to argue on appeal that the prosecution committed misconduct by allegedly threatening defense witnesses. *Id.* at 8-10.

1. Legal Standard

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment also guarantees effective assistance of appellate counsel on direct appeal from a criminal conviction. *Evitts v. Lucey*, 469 U.S. 387, 396-400, 105 S. Ct. 830, 836-38,

83 L. Ed. 2d 821 (1985); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000). To prove ineffective assistance, Walker must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. To show deficient performance, Walker must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id*. at 688. There is "a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct." *Kratsas v. United States*, 102 F. Supp. 2d 320, 322 (D. Md. 2000) *aff'd,* 9 F. App'x 107 (4th Cir. 2001) (*citing id*. at 688-89). The performance of appellate counsel is also entitled to the "presumption that [counsel] decided which issues were most likely to afford relief on appeal." *Fisher v. Lee*, 215 F.3d 438, 457 (4th Cir. 2000) (*citing Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir. 1993). Appellate counsel is not obligated "to assert all non-frivolous issues on appeal." *Id*. (*citing Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989).

To show prejudice, Walker must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If a defendant cannot prove prejudice, "a reviewing court need not consider the performance

prong." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing id.* at 697).

### 2. Severance

Walker asserts that his trial counsel failed "to properly argue [that] the joinder of counts was clearly prejudicial to" him. ECF No. 67 at 7. Walker was allegedly prejudiced, because: (1) he was "denied the right to testify" about Dallas's and Washington's possession of drugs that were attributed to Walker;[6] (2) his "defense would be confounded in establishing separate defenses;" and (3) the proof used to convict him of one offense could be used to convict him of the other counts. *Id.* The government contends that Walker's counsel "properly and appropriately raise[d] and argue[d] the points the Defendant is now raising." ECF No. 69 at 6.

Under Federal Rule of Criminal Procedure 8(a), "the indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Fourth Circuit "ha[s] interpreted

---

[6] Walker suggests that he would have testified in a severed trial that only covered the events of the January 16, 2007 arrest, when Dallas claimed ownership of the drugs, and in a severed trial that only covered the events of the May 22, 2007 arrest, when Washington claimed ownership of the drugs. *See* ECF No. 69 at 6.

the latter two prongs of [Rule 8(a)] flexibly, requiring that the joined offenses have a 'logical relationship' to one another." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005);[7] *see also United States v. Hirschfeld*, 964 F.2d 318, 323 (4th Cir. 1992).

Federal Rule of Criminal Procedure 14(a) permits severance "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government." Prejudice may arise from joinder of unrelated charges, because of "the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." *See United States v. Hawkins*, 589 F.3d 694, 701 (4th Cir. 2009) (*quoting Cardwell*, 433 F.3d at 385) (internal quotation marks omitted). However, "joinder is the 'rule rather than the exception,'" especially when multiple violations of the same statute are charged.[8] *See id.* at 700, 702-03 (*quoting United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980)).

---

[7] "Rule 8(a) permits very broad joinder because of the efficiency in trying the defendant on related counts in the same trial." *Cardwell*, 433 F.3d at 385 (internal punctuation and quotation marks omitted).

[8] Here, Walker was charged with five violations of § 841(a)(1) arising out of conduct that occurred in each of the three arrests. *See* ECF No. 1. He was also charged with three firearms offenses related to the January 16, 2007 and December 17, 2007 drug offenses. *See id.*

Walker's trial counsel, Chabrowe, vigorously argued that the counts of the indictment should be severed into separate trials.[9] ECF No. 48 at 7. He emphasized that, because all three arrests involved drugs, trying the offenses together would lead the jury to view the incidents collectively and conclude that Walker was a "drug kingpin." *Id.* at 9. The jury would be unable to consider the evidence for each count separately, because the evidence for one offense would inappropriately be considered probative of the other offenses. *See id.* at 8. Chabrowe asserted that the prejudice to Walker would be substantial. *Id.* Contrary to Walker's contentions, Chabrowe argued that the defense would be confounded by joinder of the offenses and that the jury might use the evidence of one offense in convicting Walker of another. *See* ECF No. 67 at 7. Chabrowe made these arguments; the Court rejected them. *See* ECF No. 48 at 14.

Chabrowe did not argue that joinder prevented Walker from testifying only about certain offenses. Without deciding if counsel erred in not presenting this argument, the Court notes that Walker has failed to show prejudice. The Fourth Circuit

---

[9] *See, e.g.*, ECF No. 48 at 8-9 ("I understand there are certainly issues of judicial economy to be considered here . . . but, Your Honor, we're [talking] about Mr. Walker's life here . . . . And I believe that having two additional days at the most to pick juries is something which is very inconsequential, in compared to . . . Mr. Walker's life.").

affirmed that all counts against Walker were properly joined. ECF No. 52 at 9. Walker makes the dubious claim[10] that he would have testified if the Court held a separate trial on his January 16th arrest, when Dallas claimed that the crack cocaine was his, *see* ECF No. 49 at 193-94, 199, and a separate trial on his May 22nd arrest, when Washington claimed the marijuana was his, *see* ECF No. 49 at 246, 248-49. Walker does not identify any testimony that he would have presented in severed trials to bolster Dallas's and Washington's testimony or that would have changed the result.[11] *See* ECF No. 67 at 7.[12] Thus, Walker has

---

[10] The Court doubts that Walker was prejudiced by not testifying in severed trials. If Walker had testified, the government could have introduced evidence of his October 4, 2001, February 19, 2001, and December 21, 1998 felony convictions for possession with intent to distribute to impeach his testimony. *See* ECF No. 49 at 165. Walker argued that joinder permitted the jury to prejudicially consider evidence from all three drug-related arrests in determining Walker's guilt on each individual count, even if instructed otherwise. *See* ECF No. 48 at 8. The jury was instructed to consider each count separately, ECF No. 50 at 87, and jurors are presumed to follow their instructions, *see United States v. Alerre*, 430 F.3d 681, 692 (4th Cir. 2005) (*citing Jones v. United States*, 527 U.S. 373, 394, 119 S. Ct. 2090, 2105, 144 L. Ed. 2d 370 (1999)).

[11] *See Strickland*, 466 U.S. at 696 (defendant has burden of showing prejudice). It is very unlikely that Walker could have presented any testimony in either case to bolster Dallas's or Washington's accounts. Dallas asserted that Walker did not know about the crack cocaine, *see* ECF No. 49 at 203, and there was substantial evidence that, when the drugs were tossed out, Dallas was not in the car as he claimed, *see, e.g.*, ECF No. 50 at 33-34. Washington asserted that Walker did not know about the marijuana until the police searched Walker's car, *see* ECF No. 49 at 257, and there was substantial evidence that the

12

failed to show a reasonable probability that, but for his
counsel's error in arguing the motion to sever, the result of
the trial would have been different.  *See Strickland*, 466 U.S.
at 694.

        3. Motion to Continue Trial

    Walker asserts that his trial counsel erred in failing to
properly file a motion to continue trial.[13]  ECF No. 67 at 7. He
contends that his counsel had insufficient time to prepare for
trial (59 days), and "[it] is impossible to determine what a
prompt and thorough investigation would disclose as to the
facts."  *Id.* at 7-8.  The government contends that Walker's
counsel "properly made an oral motion to continue the trial
date."  ECF No. 69 at 7.

    Without deciding if counsel erred, Walker has again failed
to show prejudice.  Walker does not identify any evidence that
could have changed the result of his trial that his counsel
lacked time to find.  *See id.*; *Bassette*, 915 F.2d at 940-41

---

marijuana did not belong to Washington, *see* ECF No. 50 at 13,
19-22.

[12] *Cf. Bassette v. Thompson*, 915 F.2d 932, 940 (4th Cir. 1990)
("The great failing of the appellant on his claim that other
evidence should have been presented . . . is the absence of a
proffer of testimony from a witness or witnesses he claims his
attorney should have called.").

[13] Walker contends that his counsel improperly moved for a
continuance by telephone conference and waited to make the
motion until five days before trial.  ECF No. 67 at 7.

(denying ineffective assistance claim, because although defendant claimed "that his counsel conducted an inadequate investigation," he did not advise the Court "of what an adequate investigation would have revealed or what [witnesses] might have said"). He does not identify any *sources* of potentially exonerating evidence. ECF No. 67 at 7-8. Also, despite the denial of the motion to continue, Walker's counsel vigorously represented him at trial and in the hearing on his pre-trial motions.[14] There was also overwhelming evidence of Walker's guilt.[15] *See* ECF No. 52 at 8 (Fourth Circuit holds Walker was not prejudiced by denial of motion to sever, in part, because of "overwhelming evidence against Walker"). Accordingly, Walker has failed to show a reasonable probability that, but for counsel's error in presenting the motion to continue, the

---

[14] At the pre-trial motions hearing, Walker's counsel presented argument, offered testimony and evidence to support the motions, and vigorously cross-examined the prosecution witnesses. *See, e.g.*, ECF No. 48 at 12-13, 124-26, 148. At trial, Walker's counsel presented several witnesses in his defense, vigorously cross-examined prosecution witnesses, and presented a thorough closing argument for acquittal on each of the charged offenses. *See, e.g.*, ECF Nos. 49 at 51, 54-55, 192; 50 at 38-39.

[15] For example, in the December 17, 2007 arrest, officers recovered marijuana, cocaine, heroin, four cell phones, and a loaded firearm from the car Walker was driving. *See* ECF No. 49 at 72-73, 75, 80. Officers also recovered several car service receipts showing that Walker had been driving the car for several weeks, even though it was owned by his girlfriend's dealership. *See id.* at 76-79, 100.

14

outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694.

4. Failure to Object

Walker asserts that his trial counsel erred in not objecting to remarks made by the prosecution during closing arguments that: (1) accused the defendant's witnesses of lying and encouraged the jury to feel insulted by those lies; (2) implied a personal belief that the defendant was guilty;[16] and (3) encouraged the jury to find the defendant guilty to address society's drug problems.[17] *See* ECF No. 67 at 11. The government

---

[16] During his closing, Giblin stated: "When the defendant's witnesses testified . . . I hope you were insulted. . . . You should be insulted the defendant is asking his friends to take the fall for him, because that's what's going on here." ECF No. 50 at 34. Walker asserts that this statement implies the prosecutor's personal belief that he is guilty. ECF No. 67 at 10. Although this statement may have been improper, *see infra* note 26, it does not strongly suggest Giblin personally believed in Walker's guilt, nor does any other statement made by Giblin and Dwyer. Moreover, the statement did not prejudice Walker for the reasons discussed in Section II.A.4, *infra*. Thus, defense counsel's failure to object to this statement was not ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694.

[17] At the end of her rebuttal, Dwyer argued that, by finding Walker guilty, the jury "may not be stopping the drug trade in the United States, but [it could stop Walker] from ever selling drugs[.]" ECF No. 50 at 71. She encouraged the jury to tell Walker "that the time has come to put him out of business." *Id.* Assuming, without deciding, that these comments were improper, the Court finds that Walker has not established that he suffered prejudice from his counsel's failure to object to them, for the same reasons he was not prejudiced by the failure to object to the prosecution's comments that defense witnesses were lying. *See infra* Section II.A.4.

15

contends that counsel did not err, because "the government's closing was not objectionable or improper," and the jury was instructed not to consider closing arguments as evidence. *See* ECF No. 69 at 7. The government also asserts that the decision not to object to the opposition's closing argument is a tactical decision to which courts must give deference. *See id.*

"[It] is highly improper for the government to refer to a defense witness as a liar." *United States v. Moore*, 11 F.3d 475, 481 (4th Cir. 1993) (*citing United States v. Cooper,* 827 F.2d 991, 995 (4th Cir. 1987)). It is particularly objectionable for prosecutors to imply that they have a personal opinion regarding a witness's credibility or suggest that the prosecution has extra-judicial evidence of credibility. *See Moore v. United States*, 934 F. Supp. 724, 729 (E.D. Va. 1996); *Yaitsky v. United States*, 2:04-CR-1097-PMD, 2008 WL 3845446, at *24 (D.S.C. Aug. 18, 2008).

Both Dwyer and Giblin repeatedly argued that Dallas and Washington lied in their testimony.[18] *See, e.g.*, ECF No. 50 at

---

[18] A prosecutor's improper comments often do not require reversal of the defendant's conviction if they are in response to inappropriate defense tactics. *See United States v. Young*, 470 U.S. 1, 17 (1985); *United States v. Harrison*, 716 F.2d 1050, 1051 (4th Cir. 1983). Here, Chabrowe stated several times during his closing that the police were lying. ECF No. 50 at 46-48. However, Chabrowe's statements occurred after Giblin accused Dallas and Washington of lying. Thus, Chabrowe's tactics do not mitigate the impropriety of the prosecution's argument.

34 ("Before they told you a half day's worth of lies, they also took an oath, and immediately started violating to your face."). At times, their remarks suggested they had extra-judicial evidence that these witnesses were not credible.[19] Despite the government's assertions in its opposition to Walker's § 2255 motion, the weight of authority in this Circuit is that these remarks were "objectionable" and "improper."[20] *See* ECF No. 69 at 7. Walker's counsel did not object to them.

Without deciding if counsel erred in not objecting to the prosecutors' improper remarks, Walker has not shown he was prejudiced by his counsel's failure to object. In evaluating ineffective assistance claims, the jury is generally presumed to have followed the court's instructions. *See Alerre*, 430 F.3d at 692. Thus, appropriate and prompt jury instructions mitigate

---

[19] *See* ECF No. 50 at 68-69 ("What motivates someone to come in and lie[?] I don't know Mr. Dallas. I don't know Mr. Washington. But I know the drug trade. And I know they didn't come in here to pursue justice . . . . They came in here to lie. They came in here to take the fall because that's what happens in the drug trade."); *see also* ECF No. 50 at 30-31 ("Ladies and gentlemen . . . Mr. Washington, Mr. Dallas, were lying to you. They were lying with every breath. They were lying when the defense lawyers were asking them questions, and they were lying when Miss Dwyer was asking questions, and I was asking questions.").

[20] Courts in this Circuit "have continually admonished the government" not to refer to defense witnesses as liars, particularly to suggest a personal opinion as to a witness's credibility. *Moore*, 11 F.3d at 481; *see also United States v. Campbell*, 347 F. App'x 923, 929 (4th Cir. 2009); *Yaitsky*, 2008 WL 3845446, at *24.

17

the prejudice caused by improper comments by the prosecution during opening and closing arguments. *See McHone v. Polk*, 392 F.3d 691, 707-08 (4th Cir. 2004); *Campbell*, 347 F. App'x at 929-30; *Ashe v. United States*, CIV.A. DKC 04-3115, 2011 WL 1230830, at *7 (D. Md. Mar. 29, 2011). The Court promptly instructed the jury twice--once during the defense's closing argument[21] and once after a brief recess following the conclusion of closing arguments[22]--that the lawyers' statements during closing arguments were not evidence. ECF No. 50 at 40, 74; *McHone*, 392 F.3d at 707-08 (no prejudice from prosecution's improper remarks when curative instructions "followed almost immediately upon the

---

[21] "[T]he jury . . . will rely on the testimony and their recall of the testimony. . . . The jury will base their decision on the evidence, not on the arguments." ECF No. 50 at 40.

[22] You, the members of the jury, are the sole and exclusive judges of the facts in the case. . . . You determine the credibility of witnesses, and you draw whatever reasonable inferences you decide to draw from the facts as you determine them. In determining the facts, you have to rely upon your own recollection of the evidence. What the lawyers have said in their opening statements and in their closing arguments . . . . none of that is evidence. . . . You are the sole judges of the credibility or believability of all the witnesses[.]

ECF No. 50 at 74. The Court also extensively instructed the jury on how to make credibility determinations. *See id.* at 82-85; *Ashe*, 2011 WL 1230830, at *7 (finding no prejudice caused by improper prosecution comments, in part, because the trial court thoroughly instructed the jury on how to make credibility determinations and instructed the jury not to consider attorney argument as evidence).

prosecutor's closing statement," separated only by "a brief recess"). The jury is presumed to have heeded these instructions, thereby mitigating any prejudice caused by the prosecution's statements. *See, e.g.*, *Washington v. United States*, 291 F. Supp. 2d 418, 438 (W.D. Va. 2003).

Walker has also failed to show prejudice because the evidence against him was substantial. *See, e.g.*, *supra* note 15; ECF No. 52 at 8; *cf. Moore*, 11 F.3d at 482 (prosecution's improper remarks did not affect defendant's "substantial rights, *i.e.*, affected the outcome of the trial," in part because of "overwhelming evidence of guilt"). The prosecution identified several inconsistencies and improbabilities in Dallas's and Washington's testimony--Walker's strongest exonerating evidence.[23] *See, e.g.*, ECF No. 50 at 21, 33 (Washington and Dallas both estimated the value of their drugs as far less than the drugs' street value). The jury did not need to rely on the prosecutors' characterization of the defense witnesses as liars to find Walker guilty. Finally, objecting to the prosecution's improper remarks might have drawn more attention to the remarks, or the inconsistencies in the testimony, thereby increasing any prejudicial effect. *See Moore*, 934 F. Supp. at 727 ("[A]n

---

[23] *Cf. Moore*, 11 F.3d at 482 (prosecution's improper remarks did not affect the outcome of the trial, in part "because the evidence presented was conflicting, [so] the jury must have realized that some witnesses had lied").

objection may have no effect beyond calling further attention to a damaging conflict in testimony and the inevitable conclusion that someone has lied."); *Washington*, 291 F. Supp. 2d at 438. Accordingly, Walker has failed to show a reasonable probability that the outcome of his trial would have been different if his counsel had objected to the prosecution's improper comments. *See Strickland*, 466 U.S. at 694.

Because Walker did not show that he was prejudiced by any errors of his trial counsel, Walker's petition to vacate, set aside, or correct his sentence on the basis of ineffective assistance of trial counsel will be denied.

5. Failure to Appeal Prosecutor's Conduct

Walker also asserts that he received ineffective assistance of appellate counsel, because Kushner failed to argue on appeal that the prosecutors committed misconduct by threatening to prosecute Dallas and Washington if they testified that they owned some of the drugs attributed to Walker. *See* ECF No. 67 at 8-10. The government does not respond to this argument. *See* ECF No. 69.

Threatening a defense witness with prosecution violates a criminal defendant's Sixth Amendment right to obtain witnesses in his favor. *See United States v. Golding*, 168 F.3d 700, 703-05 (4th Cir. 1999). In addition, "[a] defendant's right to present witnesses in his defense is a fundamental element of due

process." *United States v. Alston*, 98 F.3d 1335 (4th Cir. 1996) (*citing Washington v. Texas,* 388 U.S. 14, 19 (1967)). Due process is violated, when "governmental intimidation of a witness amounts to 'substantial government interference with a defense witness['s] free and unhampered choice to testify.'" *Moore*, 11 F.3d at 479, *cert. denied,* 502 U.S. 1105, 112 S. Ct. 1199, 117 L. Ed. 2d 439 (1992)) (*quoting United States v. Saunders,* 943 F.2d 388, 392 (4th Cir. 1991)). If a defendant demonstrates an improper threat or intimidation, the court must determine if the error was harmful or prejudicial. *See Saunders*, 943 F.2d at 392 (4th Cir. 1991) (*citing United States v. Teague*, 737 F.2d 378, 384 (4th Cir. 1984)) (witness intimidation); *Golding*, 168 F.3d at 703-05 (threat to prosecute). The error is harmless if the defendant was not deprived of any favorable witness testimony by the prosecutor's actions. *See Teague*, 737 F.2d at 384.

Here, Dwyer admitted that she told Washington he could be prosecuted if he testified that the marijuana belonged to him, not Walker. ECF No. 49 at 170. She suggested that she intended to threaten him with prosecution.[24] *Id.* Assuming, without

---

[24] MS. DWYER: I guess my conversation with him wasn't as threatening as --
THE COURT: As you.
MS. DWYER: -- intended, and as I thought it would be, because he's clearly going to testify.

deciding, that her statement to Washington was an improper
threat or intimidation, the error was harmless because
Washington testified for Walker.[25]  *See Teague*, 737 F.2d at 384.
Because Walker suffered no harm or prejudice by Dwyer's actions,
his appellate counsel did not err in failing to raise the
argument on appeal. *See Jones v. Catoe*, 9 F. App'x 245, 254
(4th Cir. 2001) (counsel not ineffective for failing to raise a
harmless error on appeal); *cf. Keel v. French*, 162 F.3d 263, 272
(4th Cir. 1998) ("[A]ppellate counsel is not required to raise
an issue on appeal merely because it is not frivolous.") (*citing
Jones v. Barnes,* 463 U.S. 745, 751-54, 103 S. Ct. 3308, 3312-14,
77 L. Ed. 2d 987 (1983)).  Walker did not receive ineffective
assistance of appellate counsel.

    B. Certificate of Appealability

    A certificate of appealability ("COA") must issue before a
petitioner may appeal the court's decision in a § 2255 case.
*See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be
issued "only if the applicant has made a substantial showing of
the denial of a constitutional right."  § 2253(c)(2).  The
petitioner "must demonstrate that reasonable jurists would find

ECF No. 49 at 170.

[25] There is no evidence that Dwyer told Dallas he could be
prosecuted for his testimony. *See, e.g.*, ECF No. 49 at 170-71.
Even if she did, the error was harmless because Dallas also
testified for Walker.

the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Walker has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA as to his assertions that his trial counsel failed to properly argue the motions to sever and continue trial and that his appellate counsel failed to argue on appeal that the prosecution improperly threatened his witnesses with prosecution.

However, given the number of assertions by Giblin and Dwyer during their closing arguments that Washington and Dallas lied in their testimony, the Court's holding that no prejudice was created is a closer call. The Fourth Circuit has held that, when the jury is properly instructed, six instances of the prosecution calling a defense witness a liar did not prejudice the defendant's right to a fair trial. *Campbell*, 347 F. App'x at 929-30. Here, unlike in *Campbell*, the prosecution's improper

remarks are fairly classified as extensive--the Court counts 12 separate instances in which the prosecution argued that Dallas and Washington had lied.[26] *See id.* at 929; ECF No. 50 at 22, 30, 32, 33-35, 65-66, 68-69. Although several factors, most notably curative jury instructions, mitigated the prejudice caused by the remarks, because of the extent of the remarks, the Court will issue a COA to Walker on this issue only.

III. Conclusion

For the reasons stated above, Walker's motion to vacate, set aside, or correct sentence will be denied.

$\underline{\hspace{1cm}10/23/13\hspace{1cm}}$
Date

$\underline{\hspace{3cm}}$
William D. Quarles, Jr.
United States District Judge

---

[26] The prosecution also asserted that the jury should be "insulted" by Dallas's and Washington's testimony. ECF No. 50 at 34, 68. These remarks were also improper. *See Moore*, 710 F.2d at 159 (prosecutor's comment that defense witness "insulted" the jury by lying to them "strayed close to, if not beyond, the outer limits of proper argument").

24